Next case in our call this morning is agenda number three, case number 106616, in re Alfred H.H. May it please the court, counsel. My name is Laurel Spahn. I'm one of the attorneys from the Legal Advocacy Service Division of the Illinois Guardianship and Advocacy Commission and I'm one of the attorneys for the appellant Alfred H.H. Illinois reviewing courts have applied exceptions to mootness in mental health cases for over 30 years in almost every case. Mental health cases always involve questions of compliance. They are not just factual disputes. When there are questions about the sufficiency of the evidence, like in Alfred H.H.'s case, that is a question of compliance. Was there sufficient evidence to meet the clear and convincing standard required by the mental health code to take away Alfred H.H.'s liberty? To say that sufficiency of the evidence questions do not meet any of the established exceptions to mootness has the effect of excluding an entire class of mental health respondents from their right to appeal. This court has said that such a result would nullify a mental health respondent's right to appeal because of the short duration of the orders. The fourth district has been alone in dismissing mental health cases as moot and even that district has not been consistent since the Alfred H.H. decision. A disturbing case that has come out of the fourth district since Alfred H.H. has been a case where the fourth district affirmed a case involving a commitment and a medication order not on the merits but because the respondent could not overcome mootness. So the most recent case from the fourth district post-Alfred H.H. involves affirming a commitment and an involuntary medication order not because the trial court was correct but because the respondent could not overcome mootness. No other district has been doing this. Each of the other districts has decided sufficiency of the evidence cases in mental health appeals since the Alfred H.H. case by applying a mootness exemption. Mental health cases are different from ordinary civil cases. They involve serious deprivation of liberty. They are brought in the name of the people of the state. The state is always a party. There is the higher standard of proof, clear and convincing evidence. The result is an adjudication of mental illness and then a finding of subject to either commitment or some form of involuntary treatment. So these... Are you asking us to create a specific exception to the mootness doctrine for mental health cases? Yes, Your Honor. Mental health cases have a couple of purposes. One is to protect the public. The other is to afford treatment to mental health respondents who meet the statutory criteria. And this treatment starts with the court process, with aspects of therapeutic jurisprudence, giving the respondents all the rights and protections they're entitled to, starting with the court process. This has been shown to have a positive effect. That effect is that patients will respond more effectively to aspects of procedural justice. That's from the Bruce Winnick book, Civil Commitment, A Therapeutic Jurisprudence Model. That's cited in the appellant's main brief. Mental health cases... Has it ever been cited in any case that you're aware of? I'm sorry? Has it ever been cited in any case that you are aware of? The concept of therapeutic jurisprudence... What was in the book that you just made reference to? I did not find a specific reference to that, although there are a lot of references to the idea that commitment, an order for commitment or an order for voluntary treatment has a stigmatizing effect. Illinois courts have used the term stigma, ostracism. There's recognition in Illinois and elsewhere that a commitment or an order for voluntary treatment is going to stay with that person and it's going to always be an ominous presence in any future action between the respondent and the legal system. There's a chance for increased or repeat commitments because of an earlier commitment or because of an earlier involuntary treatment order. So there is that language in Illinois and elsewhere. What is the precise nature of your client's appeal? Are you arguing strictly that there was insufficient evidence or is there a component that the trial court impermissibly relied on previous hospitalization? No. In this case, this is a... Alfred H.H.'s case involves a question of whether there was sufficient evidence to meet the statutory requirement of clear and convincing to find him subject to commitment. There's also a question at the appellate level as to whether there was sufficient evidence to meet the statutory requirement of clear and convincing to find him subject to commitment, whether hospitalization was the least restrictive alternative. So that's the nature of his appeal. Would the result be that in any sufficiency of evidence case there would be a judicial review of that evidence? Well, according to Alfred H.H., any case involving whether the evidence is sufficient to meet the clear and convincing standard, those cases would be considered moot and would not be subject to review.    Thank you. Thank you. Thank you. Thank you. Thank you. So you're looking for a per se rule that mootness does not apply to mental health cases? Yes. Yes, Your Honor. Because mental health cases do not fit within the strictures of the exceptions of the mootness doctrine? Oh, no. They do fit within the exceptions to the mootness doctrines. And I can go through each exception. But your primary concern would be that there would be a ruling of this court that mootness doesn't even apply. You wouldn't even have to go through in every case to find whether or not a mental health case fits within the exceptions. Maybe because of the timeframe or what have you. Your first order of business would be a per se exception to the mootness doctrine for mental health cases. Yes, Your Honor. And I think that's where the court may have been heading in the Barbara H. decision. But that was not raised at the time. Turning to the three exceptions, there's public interest, capable of repetition yet evading review, and collateral consequences. The public interest exception has three components. The public nature of the issue, the need for authoritative guidance, and the likelihood that the issue will recur. First, the public nature of the issue. Involuntary mental health orders are considered serious deprivations of a person's liberty. And this deprivation is pursued by the people. The public interest here has often just been assumed in the Illinois cases. And that makes sense. How are persons with mental illness being treated in the name of the state? The need for authoritative guidance. The decisions in these cases have an impact on the lawyers and the judges and the roles that they have in these proceedings. In Alfred H. H.'s case specifically, there's a need for authoritative guidance. What are the boundaries for using indirect evidence to commit someone? What amounts to clear and convincing evidence when police bring a person to the hospital based on the report of another person? The likelihood that the issue will recur. Questions of what will satisfy the public are likely to recur. And these questions do come up all the time. And we know from the case law, for example, what needs to be shown to prove that an individual is not able to provide for their basic needs. We know from case law what amounts to a threat versus a complaint to sue someone. Turning to capable of repetition yet evading review. The Alfred H. H. decision said the first part of capable of repetition is met. Mental health orders are of short duration. Generally they're 90 days. The second part of capable of repetition yet evading review can be repeated. In Alfred H. H.'s case, it has been repeated. And capable of repetition yet evading review can apply to virtually every mental health respondent. Now the exception here is if the respondent dies during the appellate process. Collateral consequences. This court granted permission for me to cite a case that I had not cited in the case law. I had not cited in my brief. The Butler cases from the late 1970s. In Butler number one, the appellate court dismissed a mental health case as moot, saying there are no collateral consequences. From Butler number two, we know that the Supreme Court reinstated the appeal. And then the first district decided the case on the merits. When the first district decided the case, the first district reversed the appeal and said there was not sufficient evidence to take away this individual's liberty. There are specific collateral consequences that can result from a first commitment. In Alfred H. H.'s case, this is his third commitment. So we must look at the broader consequences related to a first commitment, a second commitment, a third commitment or more that are not so easily measured. Adjudication of mental illness and subject to commitment, as I said a few minutes ago, is considered an ominous presence in any interaction between the individual and the legal system. And this is from the case of people versus none. Multiple commitments can end up defining a person. And no one can say at what point the number of commitments renders a person's reputation irredeemable. That's also from the none case. And this is where principles of therapeutic jurisprudence apply. Win or lose, appellate review means that the respondent has a process to which he is entitled. Win, the respondent is vindicated. Lose, the respondent knows that his case was reviewed by a higher court and that the higher court found that the trial court's order, that the trial court's process was legitimate. Sometimes even losing an appeal comes with a vindicating dissent. Alfred H.H.'s earlier appeal involved sufficiency of the evidence. His commitment order at that time was affirmed. But one justice dissented and here's what that justice said. Mental health proceedings are part of the court process. They are meant to be adversarial. The state bears a heavy burden of proof. This scanty record and the hearing conducted ought not to be considered past muster in a free society. So there is value to mental health respondents in having their appeals decided on the merits. If I understand your argument correctly, your argument's really with the fourth district, isn't it? I mean, you're saying in the other districts of the appellate court, they are routinely reviewing these matters. Or are they reviewing these cases? And it's done on a case-by-case basis. So you're asking us to adopt a per se rule to address something that may be unique to the fourth district. Is that correct? Well, this has come out of the fourth district. And it does seem that this is only a problem with the fourth district, dismissing these cases as moot. Since the Barbara H. decision, the fourth district has been the only district to have a case-by-case review of mental health cases. Before that, before the Barbara H. case, there were many years where mental health cases were decided on the merits with no discussion of mootness at all. Other cases, other cases in Illinois are decided on the merits without a mootness determination in each case. In the criminal context, if a claim on appeal challenges the validity of a conviction, although the sentence is completed, that case is not considered moot. And I would suggest to the court that the stigma of court-ordered involuntary mental health treatment is as pervasive as the stigma of a criminal conviction. As for Ms. Spahn, as much as your argument favors a per se exception to mootness for the mental health cases, it would appear that the argument is framed by the state that the state's position virtually would mean that no one will ever obtain review of commitment order on the merits, right? So what I'm getting at is, in light of Justice Garmon's question, the issue has been properly framed as to whether or not, because of the brief duration of these orders, whether or not it would be advisable to this court to just have a bright line per se, forget about mootness in a mental health case, versus the state's position that says that, you know, these cases are such that probably the exceptions to mootness shouldn't apply in a lot of instances. Does that make any sense? I mean, are we faced at least in argument with both ends of the spectrum here as this case is presented to us? Well, I am asking for a per se rule. The state is saying, let's continue to do a case-by-case, let's do this on a case-by-case basis, which would permit, at least in the Fourth District, sufficiency of the evidence cases to be excluded from appellate review. And really, one of the mootness, or all of the mootness exceptions, the public hearing, the public hearing, the public interest, the capable of repetition, yet evading review, the collateral consequences, are going to apply in virtually every mental health case. Distinguishing sufficiency of the evidence from other issues of compliance in mental health proceedings is not correct. In mental health cases, this is argued at the trial level, too. Do these facts presented by the state, do these facts meet the standard required by the mental health code to find someone subject to commitment or to find someone subject to treatment and take away their liberty, take away their liberty and commitment, take away their autonomy in a medication or electroconvulsive therapy case? So these are still issues of compliance. And this court has said in the case of Mary Ann P. that both the procedures and the proof, the level of proofs that are required, these are matters of substantial public concern. So for the Fourth District to say, if we have a sufficiency of the evidence case, we're not going to bother with it. That's an insult to the respondent. That's an insult to the whole court process. I'd like to point out, too, that expediting mental health cases does not solve this problem. Expediting is a possibility under Rule 311, but it is discretionary. Even if the court does grant an expedited appeal schedule, it can be difficult to obtain an expedited appeal schedule. It's difficult to obtain transcripts and the record quickly. That may not be the case in every district, but I can tell you that it's hard to get those things even within the time frame in Cook County. A respondent has 30 days to decide whether or not to appeal. If the respondent waits until the end of that time period, and that's a good thing to have that 30-day period, because as I mentioned in the opening brief, that 30-day period, a lot can happen in the life of a mental health respondent. The respondent may be discharged. The respondent may, yes? If you want to take 30 seconds to wrap up. Thank you. On behalf of Alfred H.H. and mental health respondents, we ask that you reverse the Fourth District's decision and remand Alfred H.H.'s case for decision on the merits, and we do ask that you establish a rule providing for appellate review of mental health cases where the underlying commitment or treatment orders have expired. Thank you. Chief Justice, Your Honors, may it please the Court, I'm Assistant Attorney General Richard Huzzack, Counsel for the People of the State of Illinois, and I urge the Court not to adopt a per se rule that final orders in mental health cases can never be dismissed as moot. And I want to go directly to Justice Thomas' question, and I'd like to clarify that it is not the State's position that you have a case-by-case approach to each of these, and it may well be that in many of these cases that one of the mootness exceptions would apply. We are not suggesting that any less significance should be attached to the questions that arise in these cases under a public interest exception analysis than should apply in other cases before the Court. And that analysis would be a case-by-case approach to each of these cases, and the State's position is that the public interest would be informed by the fact that some of these questions might not otherwise get decided, clarifying the law, given the short nature of these orders. That's a factor that should be weighed into the public interest equation. Mr. Huzzack, maybe my question was too strong, but the State's position is, isn't it, that in the ordinary appeal challenging only the propriety of the trial court's ruling, that in the propriety of any given commitment order, your position seems to be that it's going to be very difficult, at least, to show no interest, or your position is that that probably has no interest to the public and no party will be able to demonstrate that the identical question is likely to rise again, right? So you're saying, at least in those type of orders, it's going to be difficult to meet the mandates of any mootness exception? On a straight sufficiency of the evidence appeal, where there's not a claim of a collateral consequences exception to mootness, which obviously goes beyond the issues presented to the Court. But, yes, the animating purpose of those exceptions to mootness is that there's some discreet legal issue that resolving it in that appeal, even though the case is moot, will not be an issue. It will provide helpful guidance for the courts or the parties in future disputes, the one for anybody in the public generally, if the dispute is likely to recur, and the latter, the capable of repetition. And that's all that I was trying, probably unartfully, to say, that at least that issue is framed for us, that Ms. Spahn would say, in those type of cases, don't even require us to prove that mootness exception exists, just give us a carte blanche appeal. Yes, and our position is that this case provides, I think, a good illustration of why a per se rule eliminating mootness from these orders goes too far. The appellant in this case has not identified any discreet legal issue that he presents that would provide guidance in future cases. The appellant argues that there's a benefit of therapeutic jurisprudence, and I don't know that, you know, any court has ever adopted that approach. I'm talking about the court's jurisdiction and limited exceptions to jurisdiction, and jurisdiction is not to be presumed, it has to be established, and the exceptions, I think the court has repeatedly said, have to be guarded carefully and construed narrowly so that they don't swallow the rule and the court isn't in the business of providing all sorts of advisory opinions, especially whereas here, what you have is simply a quarrel with whether the testimony of the expert psychiatrist, whether the testimony of the lawyer, whether the testimony of the psychiatrist in this case was sufficient to meet the stringent elements of an involuntary commitment proceeding, which are... Why is this court not better off, Mr. Hussock, with a rule that ensures that all such appeals, the ones we're talking about, the sufficiency of the evidence appeals, that all such appeals will be heard rather than adopting a stance that ensures that many of these appeals, maybe even most of such appeals, will not be heard? Well, there's certainly a benefit to simple bright-line rules. I mean, you know, everybody has to drive on the right side of the road, makes a lot of sense, but there are other situations in which a bright-line rule incurs trade-off costs, and this would be one of them. The courts certainly have a lot of a business to tend to, and they conscientiously apply their resources to the cases before them, but to create a mootness exception for some category of cases where nothing is at stake anymore. The reality is that it's undisputed that this case is moot. The request, you know, for a court of appeal to order him discharged comes too late. He was discharged five-and-a-half weeks after, or six weeks or so after the original commitment order. There's nothing left to be done. There's no practical consequence in this case, and to impose upon the courts the duty to decide those cases, regardless of any real-world consequence, I suppose creates the benefits of simplicity, but it also burdens the courts in essentially issuing advisory opinions when they don't really otherwise have jurisdiction. So I would advocate against that. I'm not urging that courts should readily find no exceptions to mootness in these cases. I think that the courts should conscientiously take an approach which looks to see whether some exception does apply. And I just urge the court on the facts of the case before it that the appellant has not met his burden of demonstrating the applicability of any of the relevant exceptions to mootness. The public interest exception, the capable of repetition but evading review exception, or collateral consequences. This case is the proposition that the court should not adopt a per se rule that forces appellate courts to decide cases where nothing is any more at stake between the parties, and there's no life left to the appeal, but they want the vindication of knowing that the trial court's order was right or wrong, even though it doesn't really matter in the real world. Due process doesn't require appeals. And I understand that sometimes parties want the courts to handle a matter even where they don't have jurisdiction any more to do so, but that should not be sufficient. What about the collateral consequences of having an involuntary commitment in your background? Those are potentially severe, and I don't want to suggest otherwise. And what we have indicated is that although this case doesn't present it, and the court may then not want to specifically decide it, but the situation is different when you have a first involuntary commitment in your background, and you have an involuntary commitment order. If you have never been involuntarily committed before, you have been adjudicated mentally ill and a danger to yourself or others, and even though that order may have expired by the time the appeal comes up, that is a different kettle of fish than the one we have in front of us, where the appellant has a felony conviction, he has repeated hospitalizations, and he has multiple prior involuntary commitments against him. And so for him to say, as they do in the reply brief, that there are indelible permanent consequences from an involuntary commitment order, essentially disproves the grounds for arguing that there's some incremental stigma from this one, which is, I don't know, his eighth or tenth commitment, and at least the third involuntary one. Because if there was an indelible stigma attached to the first one, then there was no incremental material negative effect from this one. And I have been careful in our brief to try and present the various types of legal disabilities that may arise from a commitment order. There are certain professional licenses that would be automatically suspended. There are certain other civil disabilities that would attach. But this is not a case in which any of those, an argument can be made that any of those results from the commitment order that was issued here because of the felony conviction and the prior involuntary commitment orders. Collateral consequences should not be treated lightly. And there are, you know, notwithstanding the burden upon the person seeking to invoke the court's jurisdiction, there are, you know, difficulties of addressing those questions in a way that is not just a matter of, you know, I don't want to minimize those. Although it's not enough to make some type of speculative or remote argument that there's collateral consequences. This appellant couldn't, for example, say that he plans to be an FBI agent and therefore, you know, he's disqualified from that because of this. I mean, that's, you know, that's just talk, so to speak. But if there is any meaningful showing of the potential of collateral consequences in a case, especially if it were in a situation unlike this one where there's a first involuntary commitment order, the State is not in this case arguing that the court should shut the courthouse door on the ability of somebody to reestablish their reputation in society and their ability to seek gainful employment and to obtain government benefits and privileges that attach to the licenses that could be affected by that type of case. We do not by any means tend to diminish the importance of the public interest in this category of proceeding. We are simply advocating that Illinois should not be a jurisdiction, I believe it would be the first jurisdiction to declare a per se exception to mootness for mental health orders under some, any of the theories that have been invoked in this case. And although a formal or informal rule that would expedite appeals in these cases, and the court has done that in other proceedings, may not be a total solution to the potential problem of unresolved appeals that expire from mental health orders. The State not only does not oppose any such rule by the court, but we encourage the court to consider the adoption of a rule. Because we are concerned about the fact that these orders are very short of duration and the only way to obtain meaningful relief from a challenge to some aspect of the case, whether it's a statutory matter or a constitutional matter or even a sufficiency of the evidence of the matter, if the only way to obtain a meaningful appeal is to have that appeal expedited, we certainly are not opposing that by any means. I'm, if I could have a minute just to look through the questions that the court presented during the appellant's opening argument and my notes, before relinquishing the rest of my time, unless the court has any other questions. Yes, very briefly, I did want to say that two things. One, that with respect to the potential stigma attached, the Fourth District, although it probably said collateral consequences should never be considered in these cases, that is not the State's position here. We have said you should not always conclusively presume collateral consequences or force the State, who doesn't have ready access to the relevant information, to disprove the possibility of collateral consequences. And then finally, on the Butler case, the opposing counsel has cited that case and other supervisory orders by this court to stand for the proposition that these types of cases should generally never be considered moot and that somehow collateral consequences, that the First District's decision in that case was reversed on that basis. We don't know what the court's reasoning was. And I don't think its principles of stare decisis suggest that any precedential effect should be given to the other supervisory orders that it cited or to the unpublished supervisory order in the Butler case. But I do want to respond to the suggestion that the court necessarily concluded that there were collateral consequences. There were other arguments made by the defendant in that appeal that could have potentially justified a mootness exception, and I see from the first reported decision that was submitted by the appellant that there was an argument that there was a violation of the right to due process because of the denial of a right to a hearing on whether he was suffering from this mental illness and disease at the time of trial, unlike what happens in other cases in which a similar thing attaches. There was also an equal protection argument with respect to the criminal proceeding as opposed to a separate mental health proceeding. There were significant issues that were presented. They may have been the basis for the court's reversal of that decision in remand, and I don't think anything can be read into that decision. This case presents the question squarely before the court. There is some conflict among the appellate districts on this issue. Many of them have said that mootness generally doesn't apply to this category of cases. The Fourth District has said at least in sufficiency of the evidence cases, we are going to look at mootness to determine whether we still have jurisdiction, and I urge the court again to adopt a case-by-case approach, including all the applicable mootness exceptions, but to reject the theory that there should be per se exception to mootness from final orders in these cases. Thank you very much. Mr. Huska, Ms. Vaughn indicated that the Fourth District is treating this differently than others, and you commented on the collateral legal consequences, exception, and your disagreement with that. The appellate court said, for the last several years, this court has rather routinely recognized an exception to the mootness doctrine in cases involving involuntary mental health admission and involuntary mental health treatment. However, given the Supreme Court's clear, consistent, and recent adherence to the established exceptions to the mootness doctrine without regard to the type of cases before it, we conclude that whether or otherwise moot appeal comes within the established exception to the mootness doctrine, they would look at it more carefully. Do you believe, and then under the capable of repetition exception, they say that with regard to the fact that the case is shorter duration, they would agree, but they say, more importantly, even if another particular exception is used, they would look at it more carefully, and if a petition for an involuntary admission were filed as to this respondent, he would not be subject to, then they emphasize exact same action. Have they narrowed the focus of that prong, or is that the law? Well, the court has used both formulations of the elements of the test for the capable of repetition yet evading review exception to mootness. It has said exact same action, and it has said exact same issue. And as I have tried to set forth in the state's brief, the exact same action formula is, I believe, a shorthand description of situations in which the relevant legal issue is again likely to come up involving the same party. The newspaper cases involving access to criminal proceedings and juvenile proceedings are ones in which the constitutional rights of First Amendment cases are going to come up again. It wasn't just the mere likelihood that another suit would be brought on similar grounds involving the same party, because the animating principle of that exception is that even though the case is moot, deciding that issue will provide guidance for future disputes or potentially avoid future disputes by providing that guidance. But that principle doesn't apply when the issue that somebody is asking the court to decide has no bearing on a potential future dispute. It's sort of like the reverse of a bait and switch type principle. What's the point of getting a case decided simply because you've got your foot in the door on one issue if resolving that issue is going to have no relevance to a future dispute involving the party in a future case? And I think what I've suggested is that the same action again principle is another way of referring to the same legal issue. And I want to be careful to qualify that by recognizing that the same legal issue doesn't mean that there has to be exactly identical, precisely the same factual circumstances that bring that issue before the court and somehow color the nature of the question presented. That would be too narrow an interpretation of the principle, and it has been rejected by the U.S. Supreme Court and by this court. But that doesn't mean that you swing to the other extreme and ignore the reason for the exception, which is that that legal issue properly defined in its scope will likely come up again. And so resolving it now makes sense to avoid having to resolve it again or never being able to resolve it because of the short duration of the types of orders that would be answered. Thank you so much, Your Honors. I urge the Court to affirm the judgment dismissing the appeal and to adopt a rule pursuant to which there would be no per se exception to mootness from final orders in mental health cases. Thank you. As an attorney representing mental health respondents, it was hard for me to listen to a representative from the Attorney General's office blithely state that nothing is at stake anymore for a mental health respondent like Alfred H.H. and that Alfred H.H. is the poster child against a per se rule. The Mental Health Code provides that past commitments can be used in the future. Often a later commitment rehashes everything from the first commitment. These cases meet each of the exceptions to mootness. There could be narrow situations where a mootness exception does not apply. With a deceased respondent, as I said in my opening argument, of course the action for involuntary admission cannot be repeated against that deceased individual, but the issues arising in that case may certainly be matters of public interest. Counsel, we've had a great deal of time to think about this and obviously are deeply concerned. Do you see any possibility of any middle ground that we're simply missing? Something short of per se, but not a blanket denial? Your Honor, I think a per se rule is warranted. I understand that, but I wonder if even with that, if you recognize that there's a potential middle ground. No. Mental health cases are important. I'd just like to point out some aspects of mental health cases that this Court has talked about over the years. Mental health cases are dependent on subjective determinations and predictions that could be wrong. That's from the Stevenson case. Both the procedures that must be followed and the proofs that must be made before a court can take away a respondent's liberty are matters of a public nature and of substantial public concern. That's from Mary Ann P. There is stigma, split, and ostracism, Stevenson, related to an adjudication of mental illness and a finding of subject to commitment or involuntary treatment. Mental health proceedings can be used as tools of oppression, and so there must be a protection against that. One protection against that is appellate review of the trial court's orders. To apply mootness under these circumstances would leave mental health respondents with no legal recourse to challenge the trial court's orders. That's from the Barbara H. case. From our research, yes, Illinois could be the first state to create a per se rule to say that mental health cases are not going to be, do not need to have a mootness determination. They are going to be decided on the merits. But Illinois has tended to be at the forefront of mental health law and has been recognized by other states, cited by other states, cited in a mental health law treatise as being a progressive state that is known to not dismiss mental health cases as moot until Alfred H. H. There have been past cases in Illinois, just a handful that we could find, where mental health cases were dismissed as moot, and that was really long ago. And those cases that stand on the books as good for dismissing a mental health case as moot, they do not appear to have been brought to this court. Those cases that have been brought to this court, once an appellate court has found the cases moot and dismissed them, this court has reinstated the cases and the appellate courts have decided the cases on the merits. A fast discharge is something this court needs to consider, too. I ran out of time in my opening argument, but when there is talk of expedited appeals, please consider that sometimes a respondent is committed and then they are discharged a week later, two weeks later, in Alfred H. H.'s case about five weeks later. How is that going to be expedited within that amount of time? And yet the trial court may have decided this case, as Stevenson talks about, on wholly subjective determinations and predictions that may have been wrong. That case is entitled to review. The mental health code provides for appellate review. There is a new commitment standard that became effective in June of 2008, and if this court decides a rule that allows for each case to be dismissed as moot, if there is going to be a case-by-case analysis, in the fourth district, will cases be dismissed as moot? Will cases never be decided on this new standard? Will sufficiency of the evidence cases never be decided? This is not the time to forego appellate review. The fourth district a few years ago issued an opinion in Dorothy J. N. where there was a special opinion, and the court pointed out in that special opinion that there are problems with mental health cases that the court is noticing. And the court urged the state's attorneys, the defense counsels, the trial judges, to become fully equipped to handle these cases in the proper manner. And... And then he made the comment that this is Alfred H.'s eighth or ninth. I thought I heard you say the third. So if you could respond to both of those to clarify the record, the number of commitments, and what your take is on the first time only. First of all, Alfred H.H. has three appeals of commitments. The record shows that he has had other hospitalizations. He had a mental health condition that he was on until about 10 to 12 years later. And Alfred H.H. is a man in his early 60s. He did not exhibit symptoms of mental illness until later life. I do not have any information to say that he has other than three commitments. I think that he has had more than three hospitalizations, but to say eight or ten commitments is incorrect. Yes, there are certain consequences that stem from a first commitment. And those have to do with possessing firearms and serving on federal juries. And in Illinois even, being able to get a driver's license. Those are things that stem from a first commitment. But the collateral consequences reach beyond a first commitment. And with each commitment, there are consequences. They are cumulative. And they come back each time a person faces the possibility of a mental health order. If a person has been committed once, and they're returned to the hospital, it's almost a guarantee that there's going to be another petition and two certificates completed because this person is known, this person was committed in the past, this person didn't cooperate and sign a voluntary, so we're going to have to commit that person. There are consequences stemming from additional commitments. It's not just the first commitment. Again, I would ask the court to reverse the Fourth District in Alfred H.H.'s case and to remand the case for a decision on the merits and to establish a rule with regard to mootness of mental health cases. Thank you. Thank you, counsel.